## A08A1033. THE SURGERY CENTER, LLC v. HUGHSTON SURGICAL INSTITUTE, LLC.

(668 SE2d 326)

ANDREWS, Judge.

Hughston Surgical Institute, LLC ("HSI") applied to the Department of Community Health ("the Department") for a certificate of need to develop an orthopedic ambulatory surgery center in Columbus. The Department, including its hearing officer and the State Health Planning Review Board, denied HSI's application. HSI then appealed the Review Board's decision to the superior court, which held that the Department had abused its discretion in denying HSI's application. We granted the application of The Surgery Center, LLC ("TSC"), another ambulatory surgery center in Columbus, to determine whether the superior court erred when it reversed the Department's denial of a certificate to HSI. We now reverse the decision of the superior court because it improperly substituted its own judgment for that of the Department.

The Review Board's decision is, by operation of law, the final decision of the Department. See OCGA § 31-6-44 (j). We treat the Department's final decision with deference because "agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches." *Bentley v. Chastain*, 242 Ga. 348, 350-351 (1) (249 SE2d 38) (1978).

> Review overbroad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency,

thereby nullifying the benefits of legislative delegation to a specialized body. Since the agency is exercising neither judicial nor legislative, but administrative, powers, the separation of powers doctrine along with this policy of respect must play a role in determining the nature of the review of agency decisions by the courts.

Id. Accordingly, and as we recently emphasized in another appeal concerning the Department's denial of a certificate of need, the superior court may reverse or modify the Department's decision

only if the appellant's substantial rights have been prejudiced because the procedures used (1) violated constitutional or statutory provisions; (2) exceeded the Department's statutory authority; (3) were unlawful; (4) were affected by legal error; (5) were not supported by substantial evidence; or (6) were arbitrary, capricious, or characterized by an abuse or unwarranted exercise of discretion.

*Ga. Dept. of Community Health v. Satilla Health Svcs.*, 266 Ga. App. 880, 885 (1) (598 SE2d 514) (2004); see OCGA § 31-6-44.1 (a). "[W]hen this Court reviews a superior court's order in [an administrative proceeding], our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citations and punctuation omitted.) *Davis v. Brown*, 274 Ga. App. 48, 50 (1) (616 SE2d 826) (2005).

So viewed, the record shows that on June 3, 2005, HSI filed an application to obtain a certificate of need concerning a proposed ambulatory surgery center specializing in orthopedics. The proposed center was to be located less than a mile from TSC in Health Service Area 8, which includes Columbus. HSI had been incorporated in April 2005, but had no existing licensed health care facility at the time of the application.

Like other "new institutional health services," proposed ambulatory surgical centers are required to obtain a certificate of need from the Department. See OCGA § 31-6-42 (a) ("The department shall issue a certificate of need to each applicant whose application is consistent with" 17 different factors including cost, quality, and relation to existing facilities). The Department's specific regulations for ambulatory service centers, Ga. Comp. R. & Regs. r. 111-2-2-.40, include a methodology for determining whether there is a need for a new center based on factors including quality, cost, supply, and demand. Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (a).

HSI admitted from the outset that no barrier to quality care existed in the Columbus area, and the hearing officer later found

that HSI had not identified "any patient population that was not presently receiving quality services." See Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (a). Rather, HSI sought a so-called "atypical barrier" exception under the need methodology for ambulatory surgery service. Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (b). Specifically, HSI's application asserted that the project would "remedy an atypical barrier to orthopaedic ambulatory surgery services based on quality through enhancements and improvements achieved in the delivery and outcome of orthopaedic surgical interventions through direct research conducted by HSI staff members."

The Department denied HSI's application on October 14, 2005, finding that the service area already had a surplus of operating rooms, that these existing facilities were significantly underutilized, and that HSI had "failed to adequately substantiate its assertions that the proposed project would remedy an atypical barrier." HSI appealed this decision to a hearing officer, who reviewed extensive documentary evidence and heard factual and expert testimony before concluding that HSI's application did not satisfy the "atypical barrier" provisions of the Department's regulations and that the application should be denied. HSI next appealed to the Review Board, which adopted the findings of the hearing officer and denied the application. HSI then appealed to the superior court, which engaged in an extensive analysis before concluding that the Review Board's affirmance of the hearing officer's decision was "unsupported by any substantial evidence," "an error of law," "arbitrary," and "an abuse of discretion." This appeal followed.

In four related assertions of error, TSC argues that the superior court erred when it substituted its judgment for that of the Department on the question of whether HSI's application should be approved. We agree.

Under Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (b), "[t]he Department *may* allow an exception to the need standard . . . in order to remedy an atypical barrier to ambulatory surgery services based on cost, quality, financial access, or geographic accessibility." (Emphasis supplied.) The same regulation provides that

> [a]n applicant seeking such an exception shall have the burden of proving to the Department that the cost, quality, financial access, or geographic accessibility of current services, or some combination thereof, *result in a barrier to services that should typically be available to citizens in the planning area* and/or the communities under review.

(Emphasis supplied.) HSI was thus required to show that orthopedic ambulatory surgical service of a sufficiently high quality was not

available in the area, that a particular group of patients needed such care, and that the proposed project would reach this population.

The record shows, however, that HSI neither argued nor proved that any specific patient population was in need of the new center or that any barrier to quality care existed. The hearing officer found a "large surplus" of orthopedic ambulatory surgical services in the area, a surplus likely to increase in light of the projected decrease in the area's population. Evidence at the hearing also showed that the HSI surgeons had substantially stopped using TSC facilities already, meaning that the new project might well result in an unnecessary duplication of services.

HSI argues that these factors were entirely irrelevant to a consideration of its application under the "quality" exception to the need standard and that the hearing officer erred when he based his decision on them. As the hearing officer noted, however, nothing in the Rules allowed for a "quality" exception concerning a single specialty ambulatory surgical center based only on "efficiencies obtained by devoting the facility to one type of surgery." At no time, in other words, did HSI show to the Department's satisfaction that the "cost, quality, financial access, or geographic accessibility" of currently available services, or "some combination thereof, result in a barrier to services that should typically be available to citizens in the planning area." Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (b); see also *Satilla*, 266 Ga. App. at 887 (1) ("the Department's regulations do not *require* that an exception be granted when an atypical geographical barrier to care exists," but provide "only that the Department 'may allow' such an exception") (emphasis in original).

We held in *Satilla* that "[t]he Review Board did not exceed its authority, abuse its discretion, act arbitrarily or without substantial evidence, or otherwise err by rejecting the hearing officer's determination" that a certificate of need should be issued. 266 Ga. App. at 888 (1). We are even less inclined to reverse the Review Board's decision where, as here, it adopts the hearing officer's findings and result without comment or criticism. Whether or not we agree with all the officer's inferences and conclusions, the Review Board was authorized to conclude from the evidence before that officer that HSI's application did not show the existence of an "atypical barrier" to orthopedic care in the service area.

Finally, HSI argues that because the Department has granted certificates of need to other applicants under the "quality" exception, the Department's denial of a certificate in this case amounts to an abuse of discretion. The record shows, however, that the hearing officer considered each of the administrative decisions brought to his attention before distinguishing them on a variety of grounds. Even if HSI's application and other successful applications are similar in

some ways, in other words, "there are dissimilarities recognized by the Review Board" in its decision, and we will not substitute our judgment in these matters for the Department's. See *State Health Planning Agency v. Cribb Indus.*, 204 Ga. App. 285, 288 (3) (419 SE2d 123) (1992).

Because substantial evidence supported the Department's finding that HSI "is simply not in the same or similar circumstances" as other applicants when it rejected its application for a certificate of need, *Cribb*, 204 Ga. App. at 288 (3), we conclude that the superior court erred when it ordered that a certificate be issued to HSI. See id. at 288 (4); *Satilla*, 266 Ga. App. at 888 (1) (reversing superior court's issuance of certificate of need when Review Board was authorized to reject hearing officer's determination on the question).

*Judgment reversed. Ruffin, P. J., concurs. Blackburn, P. J., concurs specially.*

BLACKBURN, Presiding Judge, concurring specially.

For all of the reasons stated in my dissent in *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407 (438 SE2d 912) (1993), I cannot agree with all that is included in the majority opinion. Our founding fathers never intended that the government limit new businesses to those it felt were economically necessary. It is clear that the purported justification for such control, reduction of the cost of medicine, has not been accomplished by this socialist approach. Indeed, the current economic conditions in this country and the fall of the USSR clearly demonstrate that centralized government control of markets does not work and is inconsistent with a capitalist economy. Unfortunately, the majority opinion does accurately reflect the law our legislature has authorized, so I concur in the judgment only.

DECIDED OCTOBER 8, 2008.

Waldrep, Mullin & Callahan, Joseph L. Waldrep, Arnall, Golden & Gregory, Jason E. Bring, for appellant.

Butler, Wooten & Fryhofer, James E. Butler, Jr., Joel O. Wooten, Jr., Phears & Moldovan, Victor L. Moldovan, Troutman Sanders, Mark H. Cohen, for appellee.

Parker, Hudson, Rainer & Dobbs, Thomas D. Watry, amicus curiae.