**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 13, 2015**

# In the Court of Appeals of Georgia

A15A0363.   GEORGIA   PROFESSIONAL   STANDARDS
COMMISSION v. LEE.

BARNES, Presiding Judge.

The Georgia Professional Services Commission (PSC) appeals the superior court's order reversing on due process grounds the suspension of Clarissa Lee's teaching certificate. The PSC contends that the court erred because Lee suffered no violation of a cognizable due process right when the ALJ hearing her case exercised discretion and declined to hold the record open to obtain additional evidence after Lee's subpoenaed witnesses failed to appear. The PSC further argues that even if the ALJ erred, the superior court should have remanded the case for further proceedings rather than simply reversed the ALJ's decision. Because we cannot determine from the superior court's order whether it intended to remand the case to the Office of State Administrative Hearings (OSAH) for further proceedings or to reverse it entirely, we vacate the order and remand the case for clarification of the court's order.

Lee was a fifth-grade teacher who proctored a Criterion-Referenced Competency Test (CRCT) science test in April 2010. After the test, another teacher told the school principal that some of her students were saying that Lee "gave some answers on the test." The principal retrieved seven students, sat them in every other seat around a big table in the instructional coach's room, and told them "to write down anything they had seen or heard that they thought might be inappropriate during the test." The principal then left the students with the coach to call her executive director for further instructions.

Meanwhile, the CRCT testing coordinator, who had been present in the principal's office when the report of irregularities was made, was obligated to report the issue to her supervisor. The coordinator submitted a "Testing Irregularities Documentation Form," which indicates that statements from seven students were attached when submitted, although it is difficult to tell from the record or hearing transcript whether the brief written statements in the record are the ones the students wrote on test day. Four children said either Lee told them to check specific answers or they heard her tell someone else to check her answers. On the documentation form submitted by the testing coordinator is a note indicating that Lee did not sign it because the principal asked the coordinator not to show it to Lee.

2

In response to a request from an investigator assigned to the former Internal Affairs Department of the Professional Standards and Practices Commission, the testing coordinator reviewed the test booklets and answer sheets of four students who made statements and found no erasures. The coordinator reported that the students had identical questions and answers on the page that contained the question that Lee was accused of helping with (the children apparently are not given the exact same test in the exact same order of questions), and three of them had answered the question incorrectly. One of those was the student who said Lee gave her the correct answer to that question. The coordinator also examined the overall number of erasures on the answer sheets of the entire class, and while most students had one or two erasures, they all involved different questions. She concluded, "There was nothing consistent about the erasures from student to student."

The Internal Affairs investigator interviewed multiple students about the allegations of impropriety during the CRCT testing, although he did not recall the substance of the interviews at the administrative hearing. He testified that the interviews would have been included in his full report, although no statements are attached to the report in the record. The investigator also interviewed Lee and described her at the administrative hearing as being "very forthright" and in his

opinion was not attempting to conceal anything. In his report, the investigator noted that one student, C.R., insisted that Lee gave her the correct answer, but while the students seated around C.R. heard Lee say something to C.R. they were not sure what was said. The investigator said the students agreed that Lee was leaning over each student as she patrolled the aisles, telling him or her to check their answer sheets and occasionally pointing to a particular answer or part of the test to be checked.

A compliance investigator with the Educator Ethics Division of the PSC investigated the alleged CRCT violations and interviewed the HR director, the testing coordinator, the principal, and the system investigator. She read the students' statements, and although Lee through her attorney asked to speak with her, the investigator never interviewed Lee, relying instead on a written statement from Lee that her attorney sent to the investigator. The PSC sent Lee a letter of suspension dated November 18, 2010, notifying her of the PSC's recommendation that she be sanctioned by suspending her teaching certificate for a year. That letter is not in the record either. On December 3, 2010, Lee notified the PSC that she sought a hearing before an administrative law judge and written notice of the causes for her suspension.

About 17 months later, in May 2012, the PSC finally asked OSAH to schedule a hearing on Lee's request. The hearing was initially scheduled for July 2012, then reset to August 2012 upon the request of the PSC because one of its witnesses had scheduled a vacation during that time. Lee's counsel moved to reset the hearing again due to a CLE panel conflict but the ALJ denied the motion. Both parties served multiple witness subpoenas, and the hearing was held on August 13, 2012.

At the hearing, Lee testified and denied providing any assistance to students during the CRCT in April 2010, noting that one of the students who accused her of supplying the correct answer to a question became upset with Lee because Lee would not let the student leave the room during the testing. Lee testified that she merely patrolled the aisles and generally encouraged the students to check over their answers when there was enough time for them to do so. Four students who took the CRCT test in question testified. One said Lee gave her the correct answer to question number seven but she did not change it, and another said Lee told her answers were wrong and she should fix them but also that Lee declined to explain one of questions when asked and did not tell her the correct answers. A third student said his prior statement that he heard Lee tell another student to check over two or three answers was true. The fourth and last student did not remember the test or her statement, in which she

5

said Lee told her to check her work and talked to another student about her work, but testified that she would not have made those statements if they had been false. The record includes a page of pre-printed questions that each of the four students answered "yes" or "no," which asked the students whether Lee asked any students to change their answers, whether she reviewed the answer sheets and gave any back for students to change their answers, whether she corrected any answers, and whether she gave any students answers to questions. On the back of the forms were additional statements. It is unclear from the record who gave the students these forms to complete or when they were completed, but the compliance investigator signed and dated them.

Other students were interviewed during the investigation, but their statements were not admitted into the record at the administrative hearing because they did not appear in response to Lee's subpoenas. An administrator who was present during the testing also did not appear pursuant to subpoena, and Lee asked the ALJ to continue the matter or leave the record open until she could attempt to compel their testimony through some other means. The PSC objected, arguing first that the ALJ had enough information to decide whether Lee's teaching certificate should be suspended. Alternatively, the PSC asked that if the ALJ were inclined to leave the record open,

that it be left open for only a short time. Counsel for the PSC stated that she had released the adult witness from the PSC's subpoena, but had not, of course, released her from Lee's subpoena. The ALJ denied Lee's request to continue the hearing or hold the record open, reasoning that the matter had been "pending for some time, it's in the interest of everyone to expeditiously conclude it, and ... there appears to be sufficient evidence on this issue for me to make a determination."

On August 20, 2012, the ALJ issued a decision finding credible evidence that Lee assisted students in taking the test and also that she was regarded as honest and trustworthy, and finding no credible evidence that she had adhered to the requirement to refrain from offering assistance to students during the CRCT test in April 2010. The ALJ concluded that a factual basis existed to support the PSC's recommendation that Lee's teaching certificate be suspended for one year based on conduct that violated the Code of Ethics for Educators.

On September 20, 2012, Lee petitioned the superior court for judicial review. In October 2013, the court held a hearing, the transcript of which is not included in the record, and on May 23, 2014, the court issued an order reversing the ALJ, finding that Lee was not afforded due process because she was unable to attempt to enforce

her administrative subpoenas through the superior court as provided in OCGA §§ 50-13-13 (7), (9). This court granted the PSC's application for discretionary review.

The PSC argues on appeal that the superior court erred in finding that the ALJ violated Lee's due process rights and abused its discretion; and in reversing the case rather than remanding it so the subpoenas could be enforced and the absent witnesses' testimony considered.

1. The superior court's judicial review of administrative decisions under the Georgia Administrative Procedure Act (APA), OCGA § 50-13-1 et seq., is a two-step process. First, the superior court must decide whether the factual findings are supported by any evidence, without substituting its judgment regarding the weight of the evidence. OCGA § 50-13-19 (h); *Professional Standards Comm. v. Smith*, 257 Ga. App. 418 (571 SE2d 443) (2002). Second,

> the court is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence, and is authorized to reverse or modify the agency decision upon a determination that the agency's application of the law to the facts is erroneous. A determination that the findings of fact are supported by evidence does not end judicial review of an administrative decision.

*Pruitt Corp. v. Ga. Dept. of Cmty. Health*, 284 Ga. 158, 161 (3) (664 SE2d 223) (2008). We apply the same standards of review when considering the superior court's decision on an APA appeal. See *Professional Standards Comm. v. Valentine*, 269 Ga. App. 309, 312 (603 SE2d 792) (2004).

The superior court here found that the ALJ's violated Lee's right to due process by denying her request to hold the record open until she attempted to obtain the subpoenaed witnesses' testimony. While OCGA § 50-13-13 (a) (6) authorizes the agency and hearing officer to issue subpoenas, and (a) (7) provides that "[w]hen a subpoena is disobeyed, any party may apply to the superior court of the county where the contested case is being heard for an order requiring obedience," Lee had no opportunity to use this mechanism to compel the attendance of her witnesses, one of whom the PSC had dismissed from its subpoena without consulting Lee.

Although a reviewing court may not substitute its judgment for the agency on questions of fact, pursuant to OCGA § 50-13-19 (h) (3) it "may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [m]ade upon unlawful procedure." Here, the superior court found that the ALJ's denial of Lee's

9

request to continue the matter or hold the record open to obtain testimony from her absent subpoenaed witnesses violated Lee's right to due process.

> [O]nce the State issues a professional license, such as the teaching license at issue in this case, its continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important property interests of the licensees. In such cases, the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. In cases such as this, due process requires that some form of a hearing must be held before one is finally deprived of their property interest in a professional license.

(Punctuation and footnotes omitted.) *Gee v. Professional Practices Comm.*, 268 Ga. 491, 493 (1) (491 SE2d 375) (1997). Further,

> [t]he constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard. Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party has reasonable notice and opportunity to be heard, and to present [her] claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.

(Citation and punctuation omitted.) *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999) (workers' compensation statute defining as

10

"catastrophic" an injury for which a claimant was awarded Social Security disability benefits conferred a rebuttable, not mandatory, presumption, and thus did not violate due process principles).

Under the APA, the ALJ can consider a broad range of factors, including the need for an expeditious resolution of the matter at issue, when deciding whether or not to grant a continuance. Ga. Comp. R. & Regs. 616-1-2-.41. But under the facts of this case, the superior court did not err in concluding that the ALJ abused its discretion in denying Lee's request for an opportunity to produce evidence on her behalf based on the need for an expeditious decision.

Although Lee requested a review of the PSC's November 2010 suspension decision in December 2010, the PSC did not even ask for a hearing to be scheduled until May 2012, almost a year and a half later. After the hearing was scheduled for July 2012, the ALJ granted the PSC's request to reset it because one of the PSC's witnesses was going on vacation. The administrative hearing was not held until August 2012, about 20 months after Lee requested a hearing and 27 months after the CRCT was administered. While the PSC frames the argument as whether the ALJ was absolutely required to continue the hearing to enforce Lee's subpoenas, the question

is whether the ALJ abused its discretion in denying the request and thus violated Lee's due process rights.

Considering the length of time between Lee's request for a hearing and the hearing itself, the superior court did not err in concluding that the ALJ's ruling denying Lee the right to present evidence from her witnesses was an abuse of discretion and a violation of Lee's rights to due process.

2. The PSC further argues that the superior court should have remanded the case to the Office of State Administrative Hearings instead of reversing it outright. While the superior court determined that the ALJ violated Lee's due process rights, it did not determine whether Lee's "substantial rights" were prejudiced due to this due process violation, and its order is ambiguous as to whether it intended to remand the case to OSAH for further proceedings or reverse the ALJ outright. Under OCGA § 50-13-19 (h) (3), the reviewing court "may *reverse or modify* the decision if *substantial rights* of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [m]ade upon unlawful procedure." (Emphasis supplied.) Absent a finding that Lee's substantial rights were prejudiced by this constitutional violation, we cannot presume that the superior court intended to reverse the ALJ outright and thus terminate the disciplinary proceedings

12

against her, rather than remand the case to the ALJ for further proceedings. Accordingly, we vacate the decision of the superior court and remand this case to the superior court for further proceedings consistent with this opinion.

*Judgment vacated and remanded. Ray, J., concurs in Division 2 and in the judgment. McMillian, J., concurs in the judgment.*