**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 14, 2018**

# In the Court of Appeals of Georgia

A17A1794. ASMC, LLC et al. v. NORTHSIDE HOSPITAL, INC. et al.

ANDREWS, Judge.

ASMC, LLC d/b/a Atlanta Sports Medicine Center applied to the state Department of Community Health (DCH) for a certificate of need (CON) to establish an ambulatory surgical center in the city of Alpharetta. After the DCH issued a final decision approving the CON, Northside Hospital, Inc. (Northside) and Wellstar North Fulton Hospital, Inc. (North Fulton), which opposed the CON, sought judicial review by the Fulton County Superior Court, which reversed the DCH and denied the CON. ASMC appeals from the superior court reversal order pursuant to our grant of its application for a discretionary appeal. We recognize the DCH (a party in the lower court proceedings) as a party on ASMC's appeal. OCGA § 5-6-37. ASMC and the

DCH contend that the superior court erred by rejecting the DCH's conclusion that the "atypical barrier" exception in Ga. Comp. R. & Regs. 111-2-2-.40 (3)(b) supported the award of a CON to ASMC. For the following reasons, we find the "atypical barrier" exception did not support DCH's grant of the CON and affirm the superior court's reversal of the DCH and denial of the CON.

The State Health Planning and Development Act (the Act) (OCGA § 31-6-1 et seq) was created to ensure: that access is provided to quality health care services; that health care services and facilities are developed in an orderly, economical, and cost effective manner without unnecessary duplication of services; that those services and facilities are made available to all citizens compatible with the health care needs of the various areas and populations of the state; and that only health care services found to be in the public interest shall be provided in this state. OCGA § 31-6-1. The Act sets forth the statutory provisions of the CON program (OCGA §§ 31-6-40 through 31-6-50) and provides that the DCH is authorized to administer the program and to promulgate reasonable rules and regulations interpreting the statutory provisions. OCGA §§ 31-6-21 (a), (b) (4); 31-6-42 (a). The CON program establishes a system of mandatory review requiring that, before new institutional health services and facilities can be developed, the developer must apply for and receive a CON from the

DCH. OCGA §§ 31-6-1; 31-6-40 (a), (b). The DCH reviews CON applications and issues decisions granting or denying a CON under statutory considerations in OCGA § 31-6-42 and under general and specific review considerations in rules and regulations promulgated by the DCH as set forth in Ga. Comp. R. & Regs. (rule or rules) 111-2-1-.09 and 111-2-2-.01 through 111-2-2-.43. Under OCGA § 31-6-42 (a), "[t]he [DCH] shall issue a certificate of need to each applicant whose application is consistent with the [considerations set forth in the statute] and such rules deemed applicable to a project,"[1] including the establishment of a need for the services. *Tanner Medical Center, Inc. v. Vest Newnan, LLC*, 337 Ga. App. 884, 884 (789 SE2d 258) (2016).

ASMC applied for a CON for a proposed project to develop a freestanding single-specialty ambulatory surgical center with four operating rooms specializing in orthopedic surgery to be located in the City of Alpharetta in health planning area 3. The application was opposed by Northside and North Fulton hospitals (both located in health planning area 3) and others. The DCH considered the application under the applicable statutes and rules, including the "specific review considerations for

---

[1] Except as specified in OCGA § 31-6- 43 (f), which does not apply to ASMC's application in this case.

3

ambulatory surgery services" set forth in rule 111-2-2-.40, concluded that ASMC met the criteria for the review considerations, and issued a decision granting ASMC a CON for the project (the DCH initial decision).

Under the specific review considerations for ambulatory surgery services, rule 111-2-2-.40 (3) (a) sets forth a numerical formula which governs whether a CON should be approved based on numerical need for additional services. It is undisputed in this case that the formula did not show a numerical need for the additional services proposed by ASMC's project and did not support the grant of the CON. But the DCH considered ASMC's application for a CON under an exception to the numerical need standard referred to as the "atypical barrier" exception set forth in rule 111-2-2-.40 (3)(b). That exception provides as follows:

> The [DCH] may allow an exception to the need standard referenced in (3) (a), in order to remedy an atypical barrier to ambulatory surgery services based on cost, quality, financial access, or geographic accessibility. An applicant seeking such an exception shall have the burden of proving to the [DCH] that the cost, quality, financial access, or geographic accessibility of current services, or some combination thereof, result in a barrier to services that should typically be available to citizens in the planning area and/or the communities under review. In approving an applicant through the exception process, the [DCH] shall document the bases for granting the exception and the barrier or barriers that the successful applicant would be expected to remedy.

4

Rule 111-2-2-.40 (3) (b). In its initial decision, the DCH granted the CON to ASMC based on the conclusion that ASMC satisfied the general review considerations and the specific review considerations for ambulatory surgery services under the "atypical barrier" exception in rule 111-2-2-.40 (3) (b).

In considering the exception, the DCH's initial decision found that, although ASMC failed to establish an "atypical barrier" on the basis of cost, financial access, or geographic accessibility, ASMC carried its burden to prove that granting the CON would remedy an atypical barrier to ambulatory surgery services based on quality. In support of this finding, the initial decision pointed out that the staff for ASMC's proposed project included Dr. James Andrews, an orthopedic surgeon internationally recognized for his scientific and clinical research contributions to knee, shoulder, and elbow injuries, and for his skill as one of "the finest surgeons in the country." Based on evidence that Dr. Andrews and ASMC staff trained by Dr. Andrews would perform surgery at the highest level of quality, the DCH's initial decision found that ASMC would provide orthopedic surgery services at a unique and enhanced level of quality not currently available in Georgia. As stated in the DCH's brief on appeal, the DCH found pursuant to rule 111-2-2-.40 (3) (b) that the "enhanced quality of [orthopedic surgical] care" provided by ASMC would remedy "an atypical barrier to

5

access to this service" based on quality. There was no evidence, and no claim, that planning area 3 lacked access to quality orthopedic surgery services.

Northside and North Fulton hospitals appealed the DCH's initial decision to a hearing officer pursuant to OCGA § 31-6-44 and rules 274-1-.01 through 274-1-.12. The hearing officer issued a decision which reversed the grant of the CON on grounds: (1) that the DCH misinterpreted the "atypical barrier" exception in rule 111-2-2-.40 (3) (b) and erred as a matter of law by finding that ASMC's proposed project remedied an atypical barrier to ambulatory orthopedic surgery services based on quality, and (2) that the proposed project did not satisfy general review considerations. Citing to the decision in *Surgery Center, LLC v. Hughston Surgical Institute, LLC*, 293 Ga. App. 879 (668 SE2d 326) (2008), the hearing officer concluded that, even if evidence showed that ASMC would provide orthopedic surgery services at a "highest" or "enhanced" level of quality, this could not be construed under rule 111-2-2-.40 (3) (b) to remedy an "atypical barrier" to orthopedic surgery services based on quality in the absence of proof (required by the rule) that the quality of "current services . . . result[s] in a barrier to services that should typically be available to citizens in the planning area and/or the communities under review." Pursuant to OCGA § 31-6-44 (i) and rules 274-1-.12 through 274-1-.19,

6

ASMC and the DCH appealed the hearing officer's decision to the Commissioner of the DCH, who issued a decision reversing the hearing officer's decision and reinstating the DCH's initial decision granting the CON to ASMC. The Commissioner's decision constituted the final decision of the DCH. OCGA § 31-6-44 (m); rule 274-1-.13 (8). In addition to concluding that ASMC's application satisfied the general review considerations, the Commissioner rejected the hearing officer's conclusion that the DCH initial decision misinterpreted or misapplied the "atypical barrier" exception and found that the DCH initial decision represented a more reasonable interpretation of rule 111-2-2-.40 (3) (b). Northside and North Fulton hospitals sought judicial review of the DCH's final decision in the superior court pursuant to OCGA § 31-6-44.1and rule 274-1-.20. The superior court reversed the DCH final decision and denied the CON on the ground that, based on the facts produced in support of ASMC's application, the DCH erred as a matter of law by interpreting and applying rule 111-2-2-.40 (3) (b) to support use of the "atypical barrier" exception to grant the CON. The court reached a conclusion similar to that reached by the hearing officer – that the facts on which the DCH granted the CON failed to support use of the "atypical barrier" exception under the decision in *Hughston Surgical Institute,* 293 Ga. App. 879. Accordingly, the issue presented in

7

the present appeal from the superior court order is whether or not, under the applicable facts, the "atypical barrier" exception set forth in rule 111-2-2-.40 (3) (b) supports the grant of a CON to ASMC.

The superior court's judicial review of the DCH's administrative final decision was controlled by OCGA § 31-6-44.1 (a) which provides as follows:

(a) Any party to the initial administrative appeal hearing conducted by the appointed appeal panel hearing officer, excluding the department, may seek judicial review of the final decision in accordance with the method set forth in Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," except as otherwise modified by this Code section; provided, however, that in conducting such review, the court may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the department, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the department;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in

8

excess of the "any evidence" standard contained in other statutory provisions; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under the statute, if the procedures followed by the department, the hearing officer, or the commissioner – or the administrative findings, inferences, and conclusions in the final decision – fail to comply with any requirement set forth in subsections (a) (1) through (a) (6), and the appellant's substantial rights have been prejudiced because of that failure, the court may reverse or modify the final decision of the DCH. Judicial review of the DCH final decision proceeds in two steps. See *Handel v. Powell*, 284 Ga. 550, 552-553 (670 SE2d 62) (2008). First, the court determines if "substantial evidence," as defined in OCGA § 31-6-44.1 (a) (5), supports the findings of fact in the final decision. The court must accept the DCH's findings of fact that are supported by substantial evidence. Second, the court determines, as a matter of law, "whether the conclusions of law drawn [by the DCH] from those findings of fact [supported by substantial evidence] are sound." *Palmyra Park Hosp., Inc. v. Phoebe Sumter Medical Center*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011); see *Pruitt Corp. v. Georgia Dept. of Community Health*, 284 Ga. 158, 160-161 (664 SE2d 223) (2008). We apply the same standards of judicial review when considering the superior

9

court's decision on appeal. See *Ga. Professional Standards Comm. v. Lee*, 333 Ga. App. 60, 64 (775 SE2d 547) (2015); *Ga. Dept. of Community Health v. Gwinnett Hosp. System, Inc*., 262 Ga. App. 879, 882-883 (586 SE2d 762) (2003) (our duty, like the superior court's duty, is to review whether the record supports the final decision of the administrative agency).

We find no error in the superior court's conclusion that there was a lack of substantial evidence in the record to support the DCH's grant of a CON under the "atypical barrier" exception in rule 111-2-2-.40 (3) (b), and that the DCH misapplied the exception . Undisputed facts showed that quality orthopedic surgery services of the same type that ASMC proposed to provide in its CON application were already available in the service area at issue, and neither ASMC nor the DCH makes any claim to the contrary. Rather, the claim they advanced below and on appeal is that evidence showing ASMC would provide surgery services at a higher or enhanced level of quality not currently available in the area supported granting the CON to remedy an "atypical barrier" to surgery services based on quality. But as we noted in *Hughston Surgical Institute,* 293 Ga. App. at 881, to establish the exception under section (3) (b) of the rule to remedy an "atypical barrier" to surgery services based on quality requires proof "that the . . . quality . . . of current services . . . result[s] in a

10

barrier to services that should typically be available to citizens in the planning area and/or the communities under review." Rule 111-2-2-.40 (3) (b). The rule describes an "atypical barrier" to surgery services which occurs when the quality of current services in the area results in a barrier to services that should typically be available. To establish this "atypical barrier" plainly requires proof that the quality of current surgery services available in the area is not sufficiently high to provide services that should typically be available. *Hughston Surgical Institute,* 293 Ga. App. at 881-882 (applicant seeking the "atypical barrier" exception under section (3) (b) based on quality "required to show that orthopedic ambulatory surgical service of a sufficiently high quality was not available in the area"). In the absence of this proof, there was no basis to find the "atypical barrier" to services described in section (3) (b), and no basis to grant a CON to ASMC under that section to remedy the "atypical barrier." The remedy for the "atypical barrier" described in section (3) (b) is the grant of a CON to provide surgery services of the quality that should typically be available in the area but are not available. The remedy is not the grant of a CON to provide surgery services of a higher or enhanced quality in an area that already has typically available quality surgery services. Contrary to the position taken by the DCH, nothing in section (3) (b) of the rule can be reasonably interpreted to support the grant of a

11

CON to ASMC to provide surgery services at a higher or enhanced level of quality not currently available in an area that already has currently available the same type of orthopedic surgery services of a sufficiently high quality that should typically be available.

"When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded . . . the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch." *Pruitt Corp.*, 284 Ga. at 159. And "in construing administrative rules, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the rule." Id. at 159 (citation and punctuation omitted). The judicial branch makes a de novo "independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the [administrative rule]." *Handel*, 284 Ga. at 553 (citation and punctuation omitted); *Welcker v. Ga. Board of Examiners of Psychologists*, 340 Ga. App. 853, 854-855 (798 SE2d 368) (2017). As set forth above, we find that the DCH interpretation of the "atypical barrier" exception in rule 111-2-2-.40 (3) (b) was inconsistent with the plain language of the rule, clearly erroneous, and prejudiced the substantial rights of Northside and North Fulton

hospitals. Accordingly, we affirm the superior court decision reversing the DCH final decision and denying the CON.

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur*.