598 S.E.2d 514 (2004)
266 Ga.App. 880
GEORGIA DEPARTMENT OF COMMUNITY HEALTH
v.
SATILLA HEALTH SERVICES, INC.
Memorial Health University Medical Center, Inc.
v.
Satilla Health Services, Inc.
Hospital Authority of Valdosta/Lowndes County
v.
Satilla Health Services, Inc.
Nos. A03A2244-A03A2246.
Court of Appeals of Georgia.
March 17, 2004.
Reconsideration Denied April 9, 2004.
Certiorari Denied September 7, 2004.
*515 Thurbert E. Baker, Atty. Gen., Isaac Byrd, Deputy Atty. Gen., Sidney R. Barrett, Jr., Sr. Asst. Atty. Gen., James D. Coots, Asst. Atty. Gen., for Appellant (case no. A03A2244).
*516 Morris Manning & Martin, Robert C. Threlkeld, Atlanta, for Appellant (case no. A03A2245).
Arnall, Golden & Gregory, Charles L. Gregory, Hedy S. Rubinger, Jason E. Bring, Atlanta, for Appellant (case no. A03A2246).
Nelson, Mullins, Riley & Scarborough, Jeffrey C. Baxter, Jennifer D. Malinovsky, Atlanta, Dillard & Crowley, Terry A. Dillard, Waycross, Reese and Hopkins, Clyde L. Reese, III, for Appellee.
RUFFIN, Presiding Judge.
These three companion appeals arise from a superior court order directing the Department of Community Health ("the Department") to issue a certificate of need for an adult open-heart surgery service to Satilla Health Services, Inc. d/b/a Satilla Regional Medical Center ("Satilla"). The Department and two other hospitals filed separate applications for discretionary review of that ruling. We granted the applications and docketed the appeals as Case Nos. A03A2244, A03A2245, and A03A2246. For reasons that follow, we reverse.
1. (a) The Certificate of Need Procedures. Under OCGA § 31-6-40(a) "only such new institutional health services or health care facilities as are found by the [D]epartment to be needed shall be offered in the state."[1] In accordance with this mandate, "[a]ny person proposing to develop or offer a new institutional health service or health care facility shall, before commencing such activity, submit an application to the [D]epartment and obtain a certificate of need."[2] The Department is responsible for granting or denying certificate of need ("CON") applications.[3] To assist in this review, the legislature authorized the Department to promulgate rules setting forth the criteria for evaluating applications.[4]
In May 2001, the Department developed a "Specialized Cardiovascular Services Component Plan" ("the component plan") to "identify and address health issues and recommend goals, objectives and system changes to achieve official state health policies." Based on the findings in the plan, the Department formulated standards for reviewing open-heart surgery CON applications.[5] Those standards address two important issues  need and adverse impact.[6] As explained in the component plan:
Open Heart Surgical Services and the host of ancillary services necessary to support these programs require specialty qualifications; these are not services that can or should be available in every community. The planning area for these services is the entire state. The challenge for regulatory officials is to balance necessary access against the quality and cost-containment goals of guidelines. There are currently 16 open heart programs in the state, located in the various regions. New program development should be based on a clear need for services and a determination that new development will not have an adverse impact on existing services.
Under Department of Community Health Rule 272-2-.09(13)(c)(1)(i), "[a]n application for new adult open heart surgery services shall be considered by the Department only if each and all of [five] conditions are met." Three of those conditions relate to need.[7] The other two address the potential adverse impact on existing or approved facilities.[8]
Although meeting these five conditions generally is mandatory, a few exceptions exist. As provided in Rule 272-2-.09(13)(c)(1)(ii), "[t]he Department may allow an exception to the need standard and adverse impact requirements ... to remedy an atypical barrier to open heart surgery services *517 based on cost, quality, financial access, or geographic accessibility." The exceptions enable the Department to remedy gaps in service that might otherwise remain undetected.
(b) Satilla's CON Application. The record shows that Satilla is a 231-bed hospital in Waycross, Georgia. In early 2001, it developed a plan to add an adult open-heart surgery facility to its existing range of cardiac services. The addition of such facility required a CON issued by the Department.[9]
In February 2001, Satilla submitted its CON application to the Department. Satilla acknowledged that its application did not meet all of the five conditions imposed by Rule 272-2-.09(13)(c)(1)(i).[10] It asserted, however, that it qualified for an exception based on atypical cost and geographical accessibility barriers. Before the Department ruled on Satilla's application, the Hospital Authority of Valdosta/Lowndes County d/b/a South Georgia Medical Center ("SGMC") and Memorial Health University Medical Center ("Memorial") submitted letters opposing the application. Both SGMC, located in Valdosta, and Memorial, located in Savannah, provide open-heart surgical services.
The Department's Division of Health Planning, which screened Satilla's CON application, found no merit in Satilla's request for treatment under the exceptions. The Division first determined that no atypical cost barriers affected Satilla-area patients. It further concluded that two open-heart centers in Savannah (including Memorial) and one center in Valdosta (SGMC) had "excess capacity" to care for patients and could serve patients from Satilla's service area. In addition, the Division noted that Satilla had historically referred patients needing open-heart surgery to a hospital in Jacksonville, Florida, approximately 75 miles away. Given these other available facilities, the Division found no geographic access problem for open-heart surgery in Satilla's area.
On August 24, 2001, the Department denied Satilla's CON application and forwarded the Division's evaluation to the hospital. Satilla appealed that denial to a hearing officer pursuant to OCGA § 31-6-44(c). SGMC and Memorial intervened in the proceedings.[11]
Following an evidentiary hearing conducted over several days, the hearing officer entered extensive findings of facts and conclusions of law. In those findings, the hearing officer noted that, because Satilla could not meet the need requirement in Rule 272-2-.09(13)(c)(1)(i), its "only possibility of prevailing... [was] on the basis of an exception." He further found that Satilla had abandoned its request for an exception based on cost barriers, choosing instead to focus on the atypical geographic barrier exception. The hearing officer then determined that Satilla had established an atypical geographic barrier to service and, therefore, should have been awarded a CON. In making this determination, the officer noted the practice among Satilla cardiologists of referring open-heart surgery patients to a Jacksonville, Florida hospital, rather than to facilities in Valdosta or Savannah. In paragraph 24 of his findings, he further stated:
There is an atypical geographic accessibility barrier in Satilla's service area based on: the unique and aging population which exhibits some of the highest cardiovascular disease and death rates in the State as well as the nation; the service area consisting of over 5000 square miles representing nearly 9% of the total geographic land area in Georgia; approximately 85% of service area residents are referred to hospitals more than 75 miles away in Jacksonville, Florida; based on historical referral patterns, testimony from community, individuals and practicing physicians, there is no evidence to support a determination that [SGMC's] program will improve access to Satilla's service area residents; and development of an open heart program [at Satilla] will provide reasonable access to open heart and angioplasty services, improve *518 continuity of care, lower health care costs, significantly raise the level of community awareness of cardiovascular health and save lives.
The Department, Memorial, and SGMC appealed the hearing officer's ruling to the Health Planning Review Board ("the Review Board"),[12] which reversed the hearing officer. The Review Board concluded that "there was not sufficient credible evidence in the record for the Hearing Officer to determine that an exception to the need criteria of the open heart surgery rule was warranted based on geographic access problems in the proposed service area." The Review Board further found that paragraph 24 of the hearing officer's findings of fact "was not supported by substantial evidence." Accordingly, the Review Board ordered the Department not to issue a CON to Satilla.
Satilla petitioned the Superior Court of Ware County for judicial review of the Review Board's decision.[13] The superior court reversed, determining that "the record ... fully supports the decision of the Hearing Officer and that the decision of the Review Board is not supported by substantial evidence." The court further found that the Review Board's decision "appears to be arbitrary and an abuse of discretion."
The Department, Memorial, and SGMC each filed applications for discretionary appeal. We granted the applications, and these appeals followed.
(c) Legal Analysis. To properly analyze this case, we must keep in mind the procedures at the various levels of review. The role of the hearing officer is described in OCGA § 31-6-44. That provision requires the officer to approve a CON application "if, in the hearing officer's judgment the application is consistent with the considerations as set forth in Code Section 31-6-42 and the [D]epartment's rules, as the hearing officer deems such considerations and rules applicable to the review of the project."[14] OCGA § 31-6-42 lists 14 factors that should be considered in reviewing a CON application, including whether "[t]he proposed new institutional health services are reasonably consistent with the relevant general goals and objectives of the state health plan."[15]
Following an evidentiary hearing, the hearing officer makes written findings of fact and conclusions of law, which must be filed with the Health Planning Review Board.[16] The hearing officer's decision becomes the Department's final determination unless any party, including the Department, objects to the officer's findings or conclusions.[17] Upon objection, the hearing officer's decision is reviewed by the Review Board, which must issue a written explanation if it reverses or modifies that decision.[18] By statute, however, the Review Board
shall not reverse findings of fact made by the hearing officer unless the [R]eview [B]oard specifically finds that the hearing officer's findings of fact are not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions.[19]
If a party appeals to the Review Board, the Board's decision becomes the Department's final decision by operation of law.[20] That decision may then be appealed to the superior court, but the superior court's review is limited.[21] It may reverse or modify the final decision only if the appellant's substantial rights have been prejudiced because the procedures used (1) violated constitutional *519 or statutory provisions; (2) exceeded the Department's statutory authority; (3) were unlawful; (4) were affected by legal error; (5) were not supported by substantial evidence; or (6) were arbitrary, capricious, or characterized by an abuse or unwarranted exercise of discretion.[22]
When reviewed by the courts, the Board's final decision, which, by definition, is the Department's final decision, is entitled to deference.[23] The dissent's argument that we need not defer to the Department's final word when it merely adjudicates an individual CON application turns administrative agency law on its head. Regardless of whether the Department's decision relates to one CON or a more expansive matter, an agency's final determination must be given "deference ... during judicial review."[24] And, on appeal to this Court, "our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."[25]
Without dispute, heart patients within Satilla's service area must travel some distance for open-heart surgery services. Satilla, for example, is approximately 65 miles from Valdosta, where SGMC is located, and 75 miles from Jacksonville, Florida. The record also shows, however, that Satilla patients have successfully obtained open-heart services, despite the distance. In fact, the use rate for open-heart surgery in the Satilla area is three times the rate in the remainder of Georgia. Nevertheless, the hearing officer determined that a geographic barrier to care entitles Satilla to an exception from the CON need standards.
Decisions regarding open-heart surgery certificates of need are infused with policy concerns. The legislature created the CON requirements to avoid costly and unnecessary duplication of health-care services.[26] Pursuant to statutorily mandated health-services planning,[27] the Department has determined that it is not feasible to have open-heart surgery facilities in every community. Given the special qualifications necessary to provide such services, "regionalized planning [is] the necessary approach for service planning for ... adult open heart surgery services." According to the Department's component plan, "[n]ew program development should be based on a clear need for services and a determination that new development will not have an adverse impact on existing services." The Department may grant exceptions to the need and adverse impact requirements.[28] The component plan provides, however, that such exceptions are reserved for "rare instances," where the need requirement produces "gaps in service delivery."
The evidence shows that patients within Satilla's service area currently have access to open-heart surgery facilities both inside and outside of Georgia. Although Satilla contends, and the hearing officer concluded, that the driving distance, the practice of referring patients to Florida for services, the need for quick treatment, and the high rate of heart disease in south Georgia necessitate an open-heart facility at Satilla, the Review Board disagreed. It rejected the officer's conclusion that an atypical geographic access problem demanded approval of Satilla's CON application. And given the ability of Satilla-area patients to secure such *520 services at a significant rate, we cannot find that the Review Board erred, acted arbitrarily or without substantial evidence, or abused its discretion in determining that this is not the type of "rare instance" in which an atypical geographical barrier produces a gap in service.[29]
On appeal, Satilla argues that we should defer to the hearing officer's factual findings, rather than to the Review Board's decision. But even assuming sufficient evidence supported the officer's factual determinations involving referral practices, treatment needs, and rates of heart disease, the Review Board acted within its authority in reversing the hearing officer's decision. We view the ultimate issue  whether Satilla should be granted one of the limited, discretionary exceptions authorized by the Department's regulations  as a policy decision relating to health planning. Regardless of whether certain facts might be viewed as showing a geographic barrier, those facts do not demand that an exception be granted. In other words, the Department's regulations do not require that an exception be granted when an atypical geographical barrier to care exists. The regulations state only that the Department "may allow" such an exception, a decision certainly infused with policy considerations.[30]
As noted above, we must defer to the Department's decisions regarding policy, as well as to the Department's interpretation and enforcement of its own rules.[31] And, by statute, the Review Board's determination constitutes the final decision of the Department, which is also entitled to deference, regardless of whether it is policy-oriented.[32] Such deference is particularly important in this case, which involves a rarely-used exception to requirements that are central to the CON statute and regulations.[33]
In its order reversing the Review Board, the superior court criticized the Board for (1) not specifically addressing all of the hearing officer's factual findings and (2) not delineating any facts to support its decision. The Board, however, is only required to "issue a written decision explaining why" it reversed or modified the hearing officer's decision.[34] It provided such an explanation here. No statutory provision required the Board to address each of the hearing officer's findings or make its own written findings of fact.
Finally, we recognize that Satilla physicians refer the majority of their cardiac patients who need open-heart surgery to facilities in Jacksonville, Florida, rather than to hospitals in Valdosta or Savannah. The hearing officer noted that these out-of-state referrals result in significant funds leaving this state to pay for services in Florida. Clearly, however, the Review Board determined that neither the use of out-of-state services, nor the reluctance of Satilla physicians to refer patients to in-state facilities, creates a geographical barrier warranting an exception to the Department's need regulations. This final agency determination "[is] not to be taken lightly or minimized by the judiciary."[35]
Although it may seem unfair that some Georgia citizens must travel significant distances to obtain a full range of medical services, the statutory and regulatory frameworks *521 make clear that it is not feasible to have comprehensive medical facilities in every Georgia town. Moreover, the judiciary is ill-equipped to resolve the complex issues inherent in state health planning. For these reasons, we must defer to the decision of the Department, which is charged with balancing numerous factors in determining the need for additional medical facilities.
The Review Board did not exceed its authority, abuse its discretion, act arbitrarily or without substantial evidence, or otherwise err by rejecting the hearing officer's determination that a CON should be issued in this case. Regardless of whether substantial evidence supported the hearing officer's factual findings, the Review Board was authorized to reverse the officer's policy-ridden determination that this is the type of case in which a rarely-used exception to the CON criteria should be granted. Accordingly, the superior court's order must be reversed.
2. Given our decision in Division 1, the appellants' remaining enumerations of error are moot.
Judgment reversed.
ANDREWS, P.J., JOHNSON, P.J., BARNES and ADAMS, JJ., concur. SMITH, C.J., and MILLER, J., dissent.
SMITH, Chief Judge, dissenting.
Because I conclude that the hearing officer's findings were based upon substantial evidence and that the review board's decision was not a policy decision and therefore not entitled to deference, I respectfully dissent.
I recognize that departmental regulations do not require that an exception be allowed even if it meets the standard for an exception. In my view, though, that principle applies only to the hearing officer. The statute itself limits the review board's authority to reverse the hearing officer:
[T]he review board shall not reverse findings of fact made by the hearing officer unless the review board specifically finds that the hearing officer's findings of fact are not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions.
(Emphasis supplied.) OCGA § 31-6-44(h).
The evidence supporting the hearing officer's findings and conclusion in this case includes historical patterns, the huge size of the service area, the disproportionately high incidence of heart disease in the service area, the fact that no facility within the service area is equipped for open-heart surgery, and the fact that notwithstanding that hospitals in Georgia were closer, many patients were referred to Florida hospitals for care. The failure of the CON opponents to provide any evidence that their programs would improve access to open-heart surgery services for residents of the Satilla service area further supports the hearing officer's conclusion that development of a Satilla program would improve health care, lower costs, and raise awareness in the community. I am satisfied that this evidence is quite substantial, and the review board had no authority to reverse the hearing officer's decision.
In my view, therefore, the superior court properly reversed the review board under several of the grounds set forth in OCGA § 31-6-44(m), which governs judicial review. That subsection provides, in pertinent part, that a court
may reverse or modify the final decision only if ... the administrative findings, inferences, and conclusions contained in the final decision are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the department; (3) Made upon unlawful procedures; (4) Affected by other error of law; (5) Not supported by substantial evidence...; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
I agree with the superior court that no substantial evidence supports the review board's decision, while substantial evidence supports the findings of the hearing officer. It follows that the review board violated the provisions *522 of OCGA § 31-6-44(h), acted outside of its authority, and abused its discretion.
Further, I cannot agree with the majority that the review board's decision is entitled to deference because it is "infused with policy considerations."
[A]gencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary.
Bentley v. Chastain, 242 Ga. 348, 350-351, 249 S.E.2d 38 (1978). Agencies are creations of the General Assembly. They sometimes perform activities that are legislative in nature, but also sometimes perform activities that are quasi-judicial, as in making factual determinations and adjudicating individual matters. See id. at 350, 249 S.E.2d 38. Of course, regulations adopted by an agency carry a presumption of validity. And we must defer to an administrative agency "in matters involving the interpretation of the statutes which it is empowered to enforce. [Cits.]" Albany Surgical, P.C. v. Dept. of Community Health, 257 Ga.App. 636, 638, 572 S.E.2d 638 (2002).
But giving great deference to executive agencies' policy decisions does not mean we must defer to the agency's final word when it adjudicates an individual application for a certificate of need. That decision is not a policy decision; it is simply influenced and impacted by the agency's policy  that is, the already-established rules, regulations, and any other applicable standards adopted by the agency to ensure that its individual adjudicatory decisions are not infected with caprice or bias. The Department's policy regarding exceptions to the certificate of need criteria had already been determined when this case was adjudicated. It is encapsulated in the applicable regulations issued by the Department, including Rule 272-2-.09(13)(c)(1)(ii) regarding exceptions, and its own internal directives, including its "Specialized Cardiovascular Services Component Plan." The hearing officer decided that the requirements embodied in those documents had been met. His decision was supported by substantial evidence, and the review board had no authority to reverse that decision. I would therefore affirm the superior court, thereby reversing the review board.
I am authorized to state that Judge Miller joins in this dissent.
NOTES
[1] See also OCGA § 31-6-21 (outlining the functions of the Department of Community Health).
[2] OCGA § 31-6-40(b).
[3] See OCGA § 31-6-43(g).
[4] See OCGA §§ 31-6-21(b)(4); 31-6-21.1.
[5] See Ga. Comp. R. & Regs. r. 272-2-.09(13).
[6] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(c)(1)(i).
[7] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(c)(1)(i)(I)-(III).
[8] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(c)(1)(i)(IV)-(V).
[9] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(a).
[10] According to Satilla, when it first filed its application in February 2001, it met the need and adverse impact requirements in effect at that time. During the pendency of its application, however, the rules changed, and it was unable to satisfy the new requirements.
[11] See OCGA § 31-6-44(c).
[12] See OCGA § 31-6-44(g)-(h).
[13] See OCGA § 31-6-44(m).
[14] OCGA § 31-6-44(e).
[15] OCGA § 31-6-42(a)(1).
[16] See OCGA § 31-6-44(a), (f)-(g).
[17] See OCGA § 31-6-44(g)-(h).
[18] See OCGA § 31-6-44(h).
[19] Id.
[20] See OCGA § 31-6-44(j).
[21] See OCGA § 31-6-44(m).
[22] See id.
[23] See Dogwood Square Nursing Center v. State Health Planning Agency, 255 Ga. 694, 696(2), 341 S.E.2d 432 (1986) (construing former version of OCGA § 31-6-44); see also Albany Surgical, P.C. v. Dept. of Community Health, 257 Ga.App. 636, 638(1)(a), 572 S.E.2d 638 (2002) ("The courts give great deference to executive agencies' policy decisions, because executive agencies provide a `high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches' that enables such agencies to `make rules and enforce them in fashioning solutions to very complex problems.'").
[24] Dogwood, supra.
[25] (Punctuation omitted.) Dept. of Community Health v. Gwinnett Hosp. System, 262 Ga.App. 879, 883, 586 S.E.2d 762 (2003).
[26] See Albany Surgical, supra at 636, 572 S.E.2d 638; OCGA § 31-6-1.
[27] See id.
[28] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(c)(1)(ii).
[29] See Gwinnett Hosp., supra at 883, 586 S.E.2d 762 (noting that the term "arbitrary" is defined as "fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; non-rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic") (punctuation omitted).
[30] See Ga. Comp. R. & Regs. r. 272-2-.09(13)(c)(1)(ii).
[31] See Albany Surgical, supra at 638, 572 S.E.2d 638.
[32] See OCGA § 31-6-44(j); Dogwood, supra.
[33] See Bentley v. Chastain, 242 Ga. 348, 350-351(1), 249 S.E.2d 38 (1978) ("[A]gencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems.")
[34] OCGA § 31-6-44(h).
[35] Bentley, supra at 351, 249 S.E.2d 38.