**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2022**

# In the Court of Appeals of Georgia

A22A1081. NORTHSIDE HOSPITAL, INC. v. NORTHEAST GEORGIA MEDICAL CENTER, INC. et al.

A22A1082. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. NORTHEAST GEORGIA MEDICAL CENTER, INC. et al.

A22A1124. VANTAGE CANCER CENTERS OF GEORGIA, LLC et al. v. GEORGIA DEPARTMENT OF COMMUNITY HEALTH et al.

MARKLE, Judge.

The Georgia Department of Community Health ("DCH") granted Northside Hospital, Inc. d/b/a Northside Hospital Gwinnett ("Northside") a certificate of need (CON) to build an in-house megavoltage radiation therapy ("MRT") center for the treatment of its hospitalized cancer patients. A competing healthcare provider,

Northeast Georgia Medical Center, Inc.[1] ("NGMC") sought judicial review in the Superior Court of Hall County, which reversed DCH's final decision. Additionally, RCOG Cancer Centers, LLC and Vantage Cancer Centers of Georgia ("Vantage," collectively) sought judicial review of the same agency decision in the Superior Court of Gwinnett County,[2] which affirmed DCH's grant of the CON. In Case Nos. A22A1081 and A22A1082, Northside and DCH appeal from the Superior Court of Hall County's reversal. In Case No. A22A1124, Vantage appeals from the Superior Court of Gwinnett County's affirmance. For the reasons that follow, we reverse in Case Nos. A22A1081 and A22A1082, and affirm in Case No. A22A1124.

DCH is charged with administering the CON program, "a system of mandatory review requiring that, before new institutional health services and facilities can be developed, the developer must apply for and receive a CON from the DCH." *ASMC v. Northside Hosp.*, 344 Ga. App. 576, 577 (810 SE2d 663) (2018); OCGA §§ 31-6-1;

---

[1] NGMC is identified in the record and appellate briefs as Northeast Georgia Medical Center, Inc. d/b/a Northeast Georgia Medical Center-South Hall Campus and Northeast Georgia Medical Center, Inc. d/b/a Northeast Georgia Medical Center-Main Campus.

[2] Pursuant to OCGA § 50-13-19 (b), venue in these types of proceedings is based on the petitioner's county of residence or, if a corporation, where it maintains its principle place of business.

31-6-21 (a), (b) (4); 31-6-40 (a), (b). In deciding whether to grant or deny a CON, DCH reviews the application under the general considerations set forth in OCGA § 31-6-42 (a), as well as under the agency's applicable rules and regulations. *ASMC*, 344 Ga. App. at 577; see also OCGA § 31-6-21 (b) (4) (authorizing DCH "[t]o adopt, promulgate, and implement rules and regulations sufficient to administer the provisions of . . . the certificate of need program.").

The CON application process involves three levels of administrative review. After DCH reviews the application, it issues an initial desk opinion to grant or deny the CON. OCGA §§ 31-6-43 (g), (i). The applicant or a party opposing the application may then file for an appeal before a hearing officer, who conducts a full evidentiary hearing and issues findings of fact and conclusions of law. OCGA §§ 31-6-44 (a), (d), (e), (g), (i). The hearing officer's decision becomes the final agency decision unless a party files a timely appeal with the commissioner. OCGA § 31-6-44 (i), (j). The commissioner's scope of review is set forth in OCGA § 31-6-44 (k) (1):

> In the event an appeal of the hearing officer's decision is filed, the commissioner may adopt the hearing officer's order as the final order of the department or the commissioner may reject or modify the conclusions of law over which the department has substantive jurisdiction and the interpretation of administrative rules over which it has substantive jurisdiction. By rejecting or modifying such conclusion

3

of law or interpretation of administrative rule, the department must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The commissioner may not reject or modify the findings of fact unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law.

If sought, the commissioner's decision then becomes the final agency decision. OCGA § 31-6-44 (m).

If dissatisfied with the final decision, a party may file a petition for judicial review with the superior court. OCGA § 31-6-44.1 (a). The superior court, then,

may reverse or modify the final decision only if substantial rights of the appellant have been prejudiced because the procedures followed by the department, the hearing officer, or the commissioner or the administrative findings, inferences, and conclusions contained in the final decision are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the department; (3) Made upon unlawful procedures; (4) Affected by other error of law;

4

(5) Not supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 31-6-44.1 (a).

We apply this same standard of review on appeal from a superior court's judicial review of a CON decision. *Kennestone Hosp. v. Dept. of Community Health*, 346 Ga. App. 70, 74 (815 SE2d 266) (2018). "Our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) Id. Moreover, an administrative agency's decision involving questions of policy is entitled to deference because

> agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary. Review overbroad in scope would have the effect of substituting the judgment of a judge

5

or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.

(Citation and punctuation omitted.) *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011). With these guiding principles in mind, we turn to the merits of these appeals.

The record shows that Northside applied for a CON to build an MRT department at an acute care hospital it operated in Gwinnett County in order to provide on-site radiation therapy to its hospitalized cancer patients. Although DCH had previously determined that there was not a numerical need for non-special MRT services in the planning area, Northside's application sought an atypical barrier exception to the numerical need standard based on financial access, geographic accessibility, and quality of care. See Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (a), (3) (b) (4). Northside identified Gwinnett County as its primary service area, and several other counties as its secondary service area. However, Northside contended that its own hospitalized cancer patients were encountering atypical barriers to care. It is undisputed that there are no in-hospital radiation therapy services in Gwinnett County.

DCH initially approved Northside's application and granted a CON for the project, determining that Northside had established an atypical barrier to care based on quality, and had also successfully demonstrated there would be no adverse impact to existing service providers due to projected population growth. NGMC and Vantage appealed this decision to the CON Appeal Panel, and the matter was heard over the course of several days before a hearing officer, who reversed the initial decision and denied Northside's application. Northside then filed a request for review, and the commissioner issued the final agency decision, overturning the hearing officer's decision and again granting a CON for the project.

In its order, the commissioner rejected or modified both findings of fact and conclusions of law made by the hearing officer, and determined that the hearing officer failed to consider the particular needs of hospitalized cancer patients. Specifically, the commissioner concluded: "The balancing of the needs of the patients, their comfort, their medical fragility, the costs to transfer them for a regimen of radiation treatments, and the involvement of clinical staff to transport the patient relates directly to quality." The commissioner thus determined that Northside had justified an atypical barrier exception based on quality, and found that there was no adverse impact to existing service providers.

7

NGMC and Vantage petitioned for judicial review in separate superior court circuits. The Superior Court of Hall County granted NGMC's petition and reversed the commissioner's decision, but the Superior Court of Gwinnett County denied Vantage's petition and affirmed the decision. We granted Northside's and DCH's applications for discretionary review of the Hall County court's decision, and Vantage's application for discretionary review of the Gwinnett County court's decision. These appeals followed.

*Case Nos. A22A1081 and A22A1082*

Raising multiple enumerations of error, Northside and DCH contend that the Superior Court of Hall County erred in reversing the commissioner's decision. We agree.

Because our review demands the interpretation of applicable statutes and administrative rules and regulations,

> we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. Thus, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. Similarly, in construing agency regulations, we

8

employ the basic rules of statutory construction and look to the plain meaning of the regulation to determine its meaning.

(Citations and punctuation omitted.) *Emory Univ. v. Kennestone Hosp.*, 364 Ga. App. 583, ___ (2) (ii) (A) (876 SE2d 21, 27 (2) (ii) (A)) (2022).

1. Northside and DCH contend that the Hall County court misinterpreted the commissioner's standard of review and impermissibly rejected the commissioner's final order. We agree.

Central to NGMC's arguments in these cases, as well as to Vantage's in Case No. A22A1124, is the insistence that the commissioner overstepped his authority in rejecting the hearing officer's factual findings and legal conclusions. Thus, the overarching issue before us is the scope of the commissioner's authority to reject a hearing officer's findings of fact and to draw alternate conclusions of law. We conclude that the commissioner did not exceed his authority under OCGA § 31-6-44 (k) (1).

(a) Turning to the judgment of the Hall County court, we first note that the court conflated the commissioner's scope of review with that of its own by stating:

Like reviewing courts, the [c]ommissioner is not authorized under *the substantial evidence standard* to reweigh the evidence, perform a de novo review of the facts, substitute his judgment for that of the hearing

9

officer as to the proper weight to give evidence, or make his own factual findings.

(Emphasis supplied.).

The court thus ignored the plain language of OCGA § 31-6-44 (k) (1), which commands the commissioner to review the entire record and to evaluate whether the hearing officer's finding of fact were supported — not only by substantial evidence, as is required of the superior court — but by *competent* substantial evidence.[3] Compare OCGA § 31-6-44.1 (a) (5) to OCGA § 31-6-44 (k) (1). OCGA § 31-6-44 (k) (1) thus requires the commissioner to apply an additional layer of qualitative inquiry. This higher inquiry comports with DCH's codified policy-making directive. See generally OCGA § 31-6-21; see also *Ga. Dept. of Community Health v. Satilla Health Svcs.*, 266 Ga. App. 880, 886 (1) (c) (598 SE2d 514) (2004) ("Decisions regarding . . .

---

[3] Although the phrase "competent substantial evidence" is not defined in the Act, "competent evidence" is generally defined as "[e]vidence tending to prove or disprove a matter in issue," that "is both probative and material and is admissible." Relevant Evidence, Black's Law Dictionary (11th ed. 2019) (noting that the term "competent evidence" is synonymous with "relevant evidence"). The term "substantial evidence" is defined under the Act as "such relevant evidence as a reasonable mind might accept as adequate to support . . . findings, inferences, conclusions, or decisions." OCGA § 31-6-44.1 (a) (5); see also Substantial Evidence, Black's Law Dictionary (11th ed. 2019) ("Substantial evidence" is that which "a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla.").

certificates of need are infused with policy concerns."). Moreover, the superior court's omission of the term "competent" in its recounting of the commissioner's standard of review impermissibly renders the term mere surplusage. See *Emory Univ.*, 364 Ga. App. at ___ (2) (ii) (A) (876 SE2d at 27 (2) (ii) (A)).

Furthermore, unlike the limited authority granted to the superior court on judicial review, the commissioner is expressly authorized to reject or modify findings of fact under certain conditions. Compare OCGA § 31-6-44 (k) (1) (The commissioner may reject or modify the factual findings upon determining "from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence[.]")[4] with OCGA § 31-6-44.1 (a) (5) (superior court considers whether the agency's factual findings are supported by substantial evidence). Significantly, regardless of whether the commissioner accepts the hearing officer's findings of fact, he is authorized to substitute alternate conclusions of law as long as they are "as or more reasonable" than those of the hearing officer. OCGA § 31-6-44 (k) (1); see *Satilla Health Svcs.*, 266 Ga. App. at 887 (1) (c) ("But even assuming sufficient evidence supported the

---

[4] The commissioner may also base a modification or rejection of a factual finding on a determination that the proceedings were unlawful, but no such claim is raised in these appeals. OCGA § 31-6-44 (k) (1).

11

officer's factual determinations . . . , the Review Board acted within its authority in reversing the hearing officer's decision.").

Accordingly, by limiting the commissioner to a substantial evidence standard of review, the Hall County court impermissibly circumscribed the commissioner's scope of review.

(b) NGMC argues that the commissioner's rejections or modifications of the hearing officer's findings of fact violated OCGA § 31-6-44 (k) (1) by never once explicitly stating the findings were unsupported by "competent substantial evidence." NGMC is correct in its observation regarding the absence of this phrase. However, in compliance with OCGA § 31-6-44 (k) (1), the commissioner does *state with particularity* his reasons for rejecting or modifying each finding of fact — the bulk of which were rejected as conclusory, speculative, or mere opinion, and which the commissioner determined "are not . . . actual fact findings from the record." The clear inference, then, is that the commissioner viewed these findings — to the extent they *are* factual findings — as also unsupported by competent substantial evidence. In this respect, the commissioner substantially complied with the mandates of OCGA § 31-6-

44 (k) (1).[5] See OCGA § 1-3-1 (c) ("A substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient[.]"); *Harvey v. Meadows*, 280 Ga. 166, 168 (3) (626 SE2d 92) (2006) ("[S]ubstantial compliance does not require that the language should be exactly as prescribed by the statute but that all the essential requirements of the form be prescribed. When there is actual compliance as to all matters of substance then mere technicalities of form or variations in the mode of expression should not be given the stature of noncompliance.") (citation and punctuation omitted). We thus conclude that the commissioner acted within his authority under OCGA § 31-6-44 (k).[6]

---

[5] NGMC generally contends that the commissioner's rejection of the findings of fact was impermissibly based on a predetermined rejection of the hearing officer's conclusions of law. See OCGA § 31-6-44 (k) (1) ("Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact."). However, NGMC fails to point with specificity to any such rejection or modification in support of this proposition.

[6] Citing to criminal case law, NGMC further claims that its substantial rights were prejudiced by the commissioner's purported violations of OCGA § 31-6-44 (k) (1), as the rejection of so many of the hearing officer's findings of fact must have been outcome determinative. See, e. g., *Hines v. State*, 350 Ga. App. 752, 754 (1) (830 SE2d 380) (2019) (Under plain error review, a defendant "bears the burden of persuasion with respect to prejudice, and must affirmatively show that the error probably affected the outcome below.") (citations and punctuation omitted). Even if NGMC is correct and this prejudice standard applies, it fails to take into account the commissioner's authority to draw alternate conclusions of law regardless of whether the hearing officer's findings were supported by the evidence. See OCGA § 31-6-44

13

2. Northside and DCH contend that the superior court erred in reversing the commissioner's decision that Northside's project satisfied the atypical barrier exception and other CON review considerations. We address each of the review criteria in turn, and ultimately conclude the commissioner's decision was proper.

(a) *The atypical barrier exception.*

Where, as here, DCH has determined there is a lack of numerical need, it may nevertheless exercise its discretion to grant a CON in order "[t]o remedy an atypical barrier to non-special MRT services based on cost, quality, financial access and geographic accessibility."[7] Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (b) (4); *Kennestone Hosp.*, 346 Ga. App. at 71. To warrant an atypical barrier exception, Northside was required to show that in-hospital MRT "of a sufficient high quality was not available in the area, that a particular group of patients needed such care, and that the proposed project would reach this population." *Surgery Center v. Hughston Surgical Institute*, 293 Ga. App. 879, 881-882 (668 SE2d 326) (2008) (physical

_____

(k) (1); *Satilla Health Svcs.*, 266 Ga. App. at 887 (1) (c).

[7] Only an atypical barrier exception based on quality is at issue here.

14

precedent only); *Kennestone Hosp.*, 346 Ga. App. at 74 (1) (citing *Hughston Surgical Institute*).

Here, the commissioner properly considered the standard set forth in *Hughston Surgical Institute* in determining that Northside established an atypical barrier to quality care. See 293 Ga. App. at 881-882. As to the first prong of the *Hughston* standard, it is undisputed that in-hospital MRT is not available in Gwinnett County. Id. Regarding the second prong, Northside identified its hospitalized cancer patients requiring radiation treatment as the population in need of such care.[8] Id. In its order, the commissioner emphasized the needs of this particular group of patients based on their medical fragility and discomfort, as well as the additional costs and staffing logistics required in transporting them for off-site radiation therapy. Importantly, the commissioner found that these factors directly relate to quality of care. As to the third prong, Northside's in-house MRT facility would unquestionably reach this

---

[8] In a case also involving radiation therapy services, we recognized that "administrative precedent shows that a CON applicant may rely on its own patients as the type of patient facing an atypical barrier to care." *Kennestone Hosp.*, 346 Ga. App. at 75 (1) (a). The record shows that Northside's Gwinnett County hospital treats twice as many cancer inpatients as the other hospitals in that county, and has more inpatient cancer discharges annually than any other hospital in metro Atlanta that also does not currently have an in-house MRT center. In 2019, Northside's Gwinnett County hospital transported its hospitalized cancer patients to off-site MRT centers more than 200 times.

15

population. Id. Because the record supports the commissioner's conclusion that Northside established a barrier to quality care under the *Hughston* standard, we discern no error.[9] OCGA § 31-6-44 (k) (1); see also OCGA §§ 31-6-21 (b) (10); 31-6-42 (e); Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (b) (4).

(b) *The adverse-impact rule.*

Under the applicable adverse-impact rule, Northside was also required to provide evidence of "the impact on existing and approved services which already provide non-special MRT to the residents of the planning area with the goal of minimizing adverse impact on existing and approved services of the same type in its planning area." Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (c); r. 111-2-2-.09 (applicant bears the burden of proof). The rule specifically requires a showing of the proposed MRT facility's impact on existing service providers "by taking into account existing planning area market share of existing non-special MRT services and future population growth[.]" Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (c) (2).

---

[9] We further note that the commissioner stated that his determination that the proposed project "fosters increased access and quality of care" was more reasonable than the hearing officer's conclusion to the contrary. OCGA § 31-6-44 (k) (1).

16

In its initial review, DCH found that Northside had satisfied the rule by showing that, in light of the projected growth in the number of cancer patients requiring radiation therapy, there would be no utilization impact on the existing service providers in the planning area, according to their market share. In the final order, the commissioner adopted this portion of the initial decision, essentially adopting Northside's evidence on the issue. Additionally, the commissioner referenced "ample competent evidence and supporting documentation to show the continued growth of population in Gwinnett as well as high cancer rates in the area" and "documenting Gwinnett County has the lowest number of linear accelerators per 100,000 population."

We cannot say the commissioner's decision was erroneous as the record reveals that Appellees' expert failed to show she adequately considered market share and future population growth, as expressly required by the rule; but instead largely based her opinion on projected lost referrals and a recent slight decline in treatment growth relative to population growth. See Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (c).

(c) *The existing alternatives and positive relationship criteria.*

OCGA § 31-6-42 (a) (3) requires a CON applicant to show that

[e]xisting alternatives for providing services in the service area the same as the new institutional health service proposed are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no certificate of need to provide such alternative services has been issued by the department and is currently valid[.]

See also Ga. Comp. R. & Regs., r. 111-2-2-.09 (1) (c).

Additionally, OCGA § 31-6-42 (a) (8) requires a showing that "the proposed new institutional health service has a positive relationship to the existing health care delivery system in the service area[.]" See Ga. Comp. R. & Regs., r. 111-2-2-.09 (1) (h).

In the final order, the commissioner concluded that Northside's project "satisfied all the applicable considerations in OCGA § 31-6-42 and the Department's rules" and noted the "proposed project will lead to a desirable outcome that fosters increased access and quality of care to the patient population." This conclusion is reasonable in light of the fact that there are no hospitals in Gwinnett County with in-house MRT serving cancer patients hospitalized there. Moreover, under DCH precedent, "the existence of a quality barrier to care necessarily means that no existing alternatives are solving the barrier and that a solution to the barrier would

18

have a positive relationship to the health delivery system." In Re: Northeast Georgia Medical Center (Project No. GA 2013-043) at 52; see also In Re: Kennestone Hospital (Project No. GA 2013-031) at 8-9 (commissioner's decision); In Re: Gwinnett Medical Center (Project No. GA 2008-004) at 17-19. Because the commissioner's determination that Northside established an atypical barrier to quality care was sound, it follows that the commissioner's determination that the project met these general criteria is also sound.

In sum, the superior court erred by overriding the commissioner's decision, which was supported by substantial evidence; was not in excess of his authority; did not amount to an abuse of discretion; and, therefore, was not arbitrary or capricious. See OCGA § 31-6-44.1 (a). Accordingly, we reverse the decision of the Superior Court of Hall County.

*Case No. A22A1124*

3. In this appeal, Vantage contends that the Superior Court of Gwinnett County erred by affirming the commissioner's decision to issue a CON to Northside for its hospital-based MRT center because the commissioner exceeded the statutory limits of his authority; misapplied the atypical barrier exception, the adverse impact rule, and the general CON requirements; and issued an arbitrary and capricious decision.

19

As we have determined that the commissioner's decision was proper, and there was no basis for the superior court to reject it, we conclude that this appeal is without merit. Accordingly, we affirm the judgment of the Superior Court of Gwinnett County.

*Judgment affirmed in Case No. A22A1124; judgments reversed in Case Nos. A22A1081 and A22A1082. Mercier, J., concurs in judgment only. Dillard, P. J., dissents*.

# In the Court of Appeals of Georgia

A22A1081. NORTHSIDE HOSPITAL, INC. d/b/a NORTHSIDE
HOSPITAL GWINNETT v. NORTHEAST GEORGIA
MEDICAL CENTER, INC. et al.

A22A1082. GEORGIA DEPARTMENT OF COMMUNITY
HEALTH v. NORTHEAST GEORGIA MEDICAL CENTER,
INC. et al.

A22A1124. VANTAGE CANCER CENTERS OF GEORGIA LLC
et al v. GEORGIA DEPARTMENT OF COMMUNITY
HEALTH et al.

DILLARD, Presiding Judge, dissenting.

Because the commissioner repeatedly violated the unambiguous requirements

and prohibitions delineated in OCGA § 31-6-44 (k) (1), I respectfully dissent.

2

In considering the meaning of a statute, this Court must afford the statutory text its plain and ordinary meaning,[1] consider the text contextually,[2] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[3] and seek to "avoid a construction that makes some language mere surplusage."[4] Simply put, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[5] And importantly, we only defer to an agency's interpretation of

---

[1] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[2] *Holcomb*, 329 Ga. App. at 517 (1); *see Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]").

[3] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 52 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a).

[4] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

[5] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

3

statutes "when we are unable to determine the meaning of the legal text at issue."[6] As

a result, when a statute is "not ambiguous after we apply canons of statutory

construction[,] . . . [o]ur case law . . . does not support any deference to the [DCH's]

---

[6] *City of Guyton v. Barrow*, 305 Ga. 799, 802 (2) (828 SE2d 366) (2019) (punctuation omitted); *see Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008) ("While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes . . . . The judicial branch makes an *independent determination* as to whether the interpretation of the administrative agency correctly reflects the *plain language* of the statute . . . ." (citations and punctuation omitted) (emphasis supplied)); *Exec. Limousine Transps., Inc. v. Curry*, 361 Ga. App. 626, 628-29 (865 SE2d 217) (2021) (same)). I believe the time has come to reconsider any such deference. As Judge Don Willett has aptly noted, "interpreting the laws under which Americans live is a quintessentially judicial function." *Forrest Gen. Hosp. v. Azar*, 926 F3d 221, 234 (III) (5th Cir. 2019); *see also Marbury v. Madison*, 5 U.S. 137, 177 (2 LE2d 60) (1803) (holding that "it is emphatically the province and duty of the judicial department to say what the law is"); *Michigan v. E.PA.*, 576 U.S. 743, 762 (135 SCt 2699, 2712-2714, 192 LE2d 674) (2015) (Thomas, J., concurring) ("The judicial power, as originally understood, requires a court to exercise its independent judgment in interpreting and expounding upon the laws. Interpreting . . . statutes—including ambiguous ones administered by an agency—calls for that exercise of independent judgment. *Chevron* deference precludes judges from exercising that judgment, forcing them to abandon what they believe is the best reading of an ambiguous statute in favor of an agency's construction. It thus wrests from Courts the ultimate interpretive authority to 'say what the law is,' and hands it over to the Executive . . . . [W]e seem to be straying further and further from the Constitution without so much as pausing to ask why. We should stop to consider that document before blithely giving the force of law to any other agency 'interpretations' of federal statutes." (citations & punctuation omitted)).

interpretation of the relevant CON statutes, or to its interpretation of its own unambiguous regulations."[7]

In this case, none of the parties or the majority identify any ambiguities in the text of OCGA § 31-6-44 (k) (1) or suggest this Court is unable to determine its plain meaning. Under these circumstances, then, we owe no deference to the DCH's interpretation and application of that statute.

Turning to the statute at hand, OCGA § 31-6-44 (k) (1) provides that

[t]he commissioner may not reject or modify the [hearing officer's] findings of fact unless the commissioner *first* determines from a review of the entire record, *and states with particularity in the order*, that the findings of fact were *not based upon any competent substantial evidence* or that the proceedings on which the findings were based did not comply with the essential requirements of law.[8]

This statute also provides that a commissioner's "[r]ejection or modification of *conclusions of law may not form the basis* for rejection or modification of findings

---

[7] *Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 38 (3) (a) n.5 (849 SE2d 441) (2020).

[8] (Emphasis supplied).

5

of fact."[9] And with this statutory backdrop in mind, I will now briefly outline my concerns and issues with the majority's opinion.

*Case Nos. A22A1081 and A22A1082*

1. In Division 1 (a), the majority holds the trial court erred by conflating the judicial standard of review with the commissioner's statutory authority under OCGA § 31-6-44 (k) (1) because the court limited the commissioner to the substantial evidence standard, which applies to courts, as opposed to the *more stringent* competent substantial evidence standard, which applies to the commissioner.

As an initial matter, I disagree the trial court applied the wrong standard of review. This is because, in the context of discussing and applying OCGA § 31-6-44 (k) (1)—the statute at issue—the court used the phrase "*competent* substantial evidence" over *15 times*.[10] In fact, the trial court's order included an entire paragraph

---

[9] OCGA § 31-6-44 (k) (1) (emphasis supplied).

[10] The only instance the majority cites in which the trial court omitted the word "competent" is when the court explained the commissioner may not substitute his judgment for that of the hearing officer as to the proper weight to give evidence, re-weigh the evidence, or make his own factual findings. In contrast, the 15 or so times the trial court *did* use the term "competent substantial evidence," it did so in the context of quoting, discussing, or applying the requirements set forth in *OCGA § 31-6-44 (k) (1)*.

discussing the meaning of the word "competent" in this statutory context. And most importantly, the trial court used the phrase "competent substantial evidence" when summarizing its ultimate conclusion that the commissioner exceeded his authority under the CON Act. In my view, it is evident from the trial court's order that it sought to apply the evidentiary standard delineated in OCGA § 31-6-44 (k) (1).[11]

2. Turning to Division 1 (b), the majority holds the commissioner was not required to state "with particularity" that any of the rejected or modified findings of fact were unsupported by "competent substantial evidence" because he *did* state with particularity a myriad of *other* reasons as to why he rejected or modified them. Again, I respectfully disagree.

Under OCGA § 31-6-44 (k) (1), the commissioner may reject or modify findings of fact for *only one reason* relevant to these appeals: that they are unsupported by competent substantial evidence. But the majority suggests we can *infer* the commissioner found the rejected or modified findings of fact were

---

[11] Although the majority maintains the trial court's alleged failure to use the word "competent" rendered that word, as used in OCGA § 31-6-44 (k) (1), "mere surplusage," it then goes on to hold in Division 1 (b) that the *commissioner's* failure to use the words "competent," "substantial," or even "evidence," *did not* render those words or that phrase meaningless. *See infra* note 13. I see no way to reconcile these seemingly contradictory positions.

7

unsupported by competent substantial evidence because he provided various *other* reasons for rejecting or modifying those facts "with particularity." And while this may very well be true, because any other reason is statutorily prohibited, the level of detail the commissioner engaged in is of no consequence.

Importantly, the term "competent substantial evidence" is a term of art with a specific meaning. "Substantial evidence," which is a portion of the statutory phrase at issue, is defined in the CON Act. Indeed, OCGA § 31-6-44.1 (a) (5) explains in detail what it means when a factual finding is not supported by "substantial evidence," providing that

> [n]ot supported by substantial evidence . . . shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be *in excess of the 'any evidence'* standard contained in other statutory provisions . . . ."[12]

So, at a bare minimum, the commissioner's order must establish that, in rejecting or modifying the hearing officer's factual findings, he is applying a standard "in excess of the any evidence standard." Here, the commissioner failed to do so, and the majority references no language in his order suggesting otherwise. In fact, the

---

[12] (Emphasis supplied).

commissioner never used the words "competent," "substantial," *or even "evidence"* in applying OCGA § 31-6-44 (k) (1).[13]

Additionally, although not defined in the CON Act, our Supreme Court has explained—in another context—that "[c]ompetent evidence is that which is admissible."[14] But regardless of whether any of the evidence at issue was admissible or inadmissible, the commissioner still needs to establish which specific standard of evidentiary review he applied and do so with particularity. And if the commissioner fails to apply the "competent substantial evidence" standard in rejecting or modifying a fact, he violates the plain language of OCGA § 31-6-44 (k) (1).

In this case, not only did the commissioner fail to apply the competent substantial evidence standard of OCGA § 31-6-44 (k) (1), he instead gave a laundry list of statutorily prohibited reasons for rejecting or modifying the hearing officer's findings of fact. For example, the commissioner rejected or modified findings of fact

---

[13] The only three instances in which the commissioner used the word "evidence" in his written order are when he: (1) quoted OCGA § 31-6-44 (k) (1); (2) found that evidence *supported* the hearing officer's first factual finding; and (3) concluded the hearing officer *did not address* certain evidence. Although the commissioner *discussed* some of the evidence underlying the hearing officer's factual findings and gave statutorily prohibited reasons for rejecting or modifying them, it is entirely unclear which evidentiary standard, if any, he actually applied.

[14] *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978).

9

15 and 16 as "misplaced" or "invalid." Similarly, the commissioner rejected findings of fact 7, 21, and 24, in part, because they were "misleading" or "irrelevant." And as to finding of fact 35, the commissioner rejected it in its entirety because it "diverted attention" away from a particular issue. The commissioner rejected finding of fact 48 in its entirety because it purported to build upon a certain *rationale*. In addition, the commissioner rejected finding of fact 67, in part, because it was "undergirded" by a certain *belief.* To put it plainly, the commissioner made no effort to indicate whether these factual findings were supported by evidence of any kind, much less competent substantial evidence. Needless to say, factual findings are either "supported by [competent] substantial evidence or they are not."[15]

Furthermore, although the majority does not address the appellees' argument that the commissioner *also* violated OCGA § 31-6-44 (k) (1) by basing the rejection or modification of the hearing officer's factual findings on his rejection of that officer's legal conclusions, he did so repeatedly. Indeed, OCGA § 31-6-44 (k) (1)

---

[15] *Dep't of Cmty. Health, Div. of Health Plan. v. Gwinnett Hosp. Sys., Inc.*, 262 Ga. App. 879, 883 (586 SE2d 762) (2003).

plainly and unambiguously provides that "[r]ejection or modification of conclusions of law *may not form the basis* for rejection or modification of findings of fact."[16]

Here, the commissioner modified or rejected findings of fact 21, 52, 68, and 84-85 because they were "not a finding of *fact* upon which to base *a conclusion of law*."[17] The commissioner also rejected factual findings 21, 41-43, and 47-49, in part, because they were misleading or irrelevant. But whether a finding of fact is misleading or irrelevant depends entirely upon the conclusions of law to which they would or would not relate to. In other words, even if a factual finding *is* irrelevant or misleading given the commissioner's ultimate legal conclusions, OCGA § 31-6-44 (k) (1) prohibits him from basing his rejection or modification of that finding on whether it supports those conclusions.[18]

---

[16] (Emphasis supplied).

[17] (Emphasis supplied).

[18] (Emphasis supplied). I am not suggesting the commissioner is not authorized to reach different *legal conclusions* than those of the hearing officer. As noted by the majority, under OCGA § 31-6-44 (k) (1), when rejecting or modifying a conclusion of law or interpretation of administrative rule, the DCH must "state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." But before doing so, the CON Act requires the commissioner to *first* determine which of the hearing officer's *factual findings*—irrelevant, misleading, or otherwise—are supported by competent substantial evidence. And

11

In sum, the commissioner's order is replete with violations of the plain and unambiguous language of OCGA § 31-6-44 (k) (1). As a result, it is impossible to determine which, if any, evidentiary standard of review he actually applied in this case.[19] And the commissioner certainly did not indicate with any *particularity* what standard that might be in his written order. He also expressly violated the CON Act's prohibition on rejecting or modifying the hearing officer's findings of fact based upon his differing legal conclusions. Under such circumstances, this Court cannot jettison the requirements of OCGA § 31-6-44 (k) (1) and simply infer the commissioner complied—or even substantially complied—with that statute. The trial court's judgments, then, should be vacated and the cases remanded with instructions to vacate the DCH's final decision and instruct the commissioner to issue a new decision in a manner that complies with the relevant law.[20]

---

again, he must explain this requisite determination with particularity in his order.

[19] Our ability to determine which evidentiary standard the commissioner applied is significantly hindered by his failure to even use the word "evidence" when rejecting or modifying the hearing officer's factual findings, much less competent substantial evidence or words to that effect. *See supra* note 13.

[20] *See Greene v. Dep't of Cmty. Health,* 293 Ga. App. 201, 201 (666 SE2d 590) (2008) (vacating the superior court's order and remanding the case for review by the Department under a proper standard of review); *I.N.S. v. Orlando Ventura,* 537 U.S. 12, 16 (II) (123 SCt 353, 154 LE2d 272) (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

3. Because the commissioner's decision should be vacated in its entirety, it is premature for this Court to address the merits of the parties' respective arguments as to whether the atypical-barrier exception applies. Legal conclusions are often—especially in this context—necessarily dependent upon the underlying factual findings. So, we cannot simply assume that, upon remand, if the commissioner complies with OCGA § 31-6-44 (k) (1) in adopting, rejecting, or modifying the hearing officer's factual findings, his legal conclusions will remain the same.

*Case No. A22A1124*

4. Given my conclusion that the commissioner's decision should be vacated, I would likewise vacate the trial court's order in Case No. A22A1124 and remand the case with the same instructions given in the other two cases in Division 3.

---

(punctuation omitted)); OCGA § 50-13-19 (h) (providing that, in reviewing an administrative agency's decision, "[t]he court may affirm the decision of the agency *or remand* the case for further proceedings" (emphasis supplied)).